UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TITUS WILLIS,

                Plaintiff,                Civil Action No. 21-11184

v.                                             F. Kay Behm
                                                United States District Judge

CORIZON OF MICHIGAN, *et al.*,

                                                David R. Grand
              Defendants.          United States Magistrate Judge
_____/

**REPORT AND RECOMMENDATION TO GRANT
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 75),
AND TO *SUA SPONTE* DISMISS FOR FAILURE TO STATE A CLAIM**

    *Pro se* plaintiff Titus Willis ("Willis"), an incarcerated person, brings this civil rights action pursuant to 42 U.S.C. § 1983, alleging violations of his Eighth Amendment rights against Michigan Department of Corrections' ("MDOC") employees Sophia Bradley, R.N., Warden Anthony Stewart, and Paramedic Darel Woolsey ("Defendants"), as well as Laura Davenport R.N.,[1] based on deliberate indifference to a serious medical

---

[1] Defendants assert that "Laura Davenport is a named defendant in this matter but has yet to be served with the Complaint. However, Davenport and Bradley's roles in this case are factually identical for all material purposes and the facts as applied to Bradley apply equally to Davenport." (ECF No. 75, PageID.668). As detailed in this Court's June 16, 2023 Order to Show Cause, Willis has yet to accomplish service on defendant Davenport, nor did he provide a proper service address by the required deadline of June 30, 2023. (ECF No. 89). Instead, Willis responded that "[i]t is clear that Ms. Davenport is intentionally alluding this Court and the U.S. Marshals attempting to evade civil prosecution," and that "the Attorney Generals Office has not only been mentioning the Defendant in all of their initial pleadings, legally arguing her case on her behalf . . . which indicates that the Attorney Generals Office has been in contact with the Defendant or at least knows where she is at . . ." (ECF No. 90, PageID.812-13). Although defendant Davenport has not been properly served, the Court agrees that, at this stage of the case on summary judgment, the medical evidence surrounding Defendants' medical treatment of Willis during the incident at issue are factually identical for purposes of Willis' Eighth Amendment claims, and that the constitutional analysis

need. (ECF No. 1).[2] The case was referred to the undersigned for all pretrial matters pursuant to 28 U.S.C. § 636(b). (ECF No. 7).

On April 10, 2023, Defendants filed a Motion for Summary Judgment. (ECF No. 75). Willis filed a response, and Defendants filed a reply. (ECF Nos. 86, 87).

Generally, the Court will not hold a hearing on a motion in a civil case in which a party is in custody. *See* E.D. Mich. L.R. 7.1(f). Here, the Court finds that the facts and legal issues are adequately presented in the briefs and on the record, and it declines to order a hearing at this time.

## I. RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment **(ECF No. 75)** be **GRANTED**, and that Willis' Eighth Amendment claims against defendant Laura Davenport be **DISMISSED** for failure to state a claim pursuant to 42 U.S.C. § 1997e(c)(1) and 28 U.S.C. § 1915(e)(2)(B).

## II. REPORT

### A. Background

---

applies equally to Davenport. Thus, having now considered defendant Bradley's arguments regarding Willis' failure to present evidence of deliberate indifference to a serious medical need, and with Willis having responded to those arguments, the Court finds that there is no reason not to apply those same arguments to his Eighth Amendment claims against Davenport. *See* 42 U.S.C. § 1997e(c)(1) (stating that, under the PLRA, the Court shall *sua sponte* dismiss a prisoner's § 1983 suit "at any time" if it determines that the action is frivolous or fails to state a claim upon which relief can be granted); *see also* 28 U.S.C. § 1915(e)(2)(B) (imposing same requirements for complaints filed in forma pauperis). Accordingly, for the reasons discussed herein, Willis failed to present evidence raising a material factual question that Davenport violated his Eighth Amendment rights, and such claims against Davenport should be dismissed pursuant to 42 U.S.C. § 1997e(c)(1) and 28 U.S.C. § 1915(e)(2)(B).

[2] All other claims raised in Willis' complaint were dismissed on August 12, 2022. (ECF No. 64).

Willis is a MDOC prisoner who is currently confined at the Lakeland Correctional Facility ("LCF") in Coldwater, MI.  He brings this § 1983 civil rights action, alleging violations of his rights under the Eighth Amendment based on deliberate indifference to a serious medical need.  At the time of the events at issue in his complaint, Willis was housed at the G. Robert Cotton Correctional Facility ("JCF") in Jackson, Michigan.

In a prior July 18, 2022, Report and Recommendation ("R&R"), this Court summarized the relevant allegations in Willis' complaints as follows:

> . . . Willis alleges that he experienced a "heart attack" or "stroke" in the "D-unit bathroom stall" of JCF shortly before midnight on June 6, 2018, and that two JCF nurses – one of the MDOC Defendants, Nurse Sophia Bradley, R.N., as well as Nurse Laura B. Davenport, R.N.  – "maliciously, sadistically and intentionally misdiagnos[ed] [him] inhumanly as a opioid overdose patient and unconstitutionally administered 3 separate doses of Narcan injections . . . causing an allergic reaction and Narcan poisoning forcing [him] to suffer a unnecessary wanton infliction of pain and cruel and unusual punishment . . ." Specifically, he alleges that Davenport "ordered [] Bradley to cruelly and with the intentions to cause a severe amount of unnecessary wanton infliction of life threatening pain and suffering to administer 7 to 8 dosages of Narcan." Bradley, who was "untrained" to handle his "life threatening conditions," then "unconstitutionally administered 3 separate doses of Narcan injections" in "4 mg., 2 mg., and 2 mg., doses causing an allergic reaction and Narcan poisoning."  Willis claims that Bradley's "failure to diagnose [his] actual medical issues," as well as her administration of "the wrong drug (Narcan)[] that caused an allergic reaction and Narcan poisoning," was "done intentionally to deprive [him] from receiving adequate medical care from every treating M.D. and D.O. physician thereafter, named within this Complaint."
>
> Willis further alleges that Bradley "intentionally ignored" correctional officers' and other inmates' pleas to "stop administer[ing] Narcan" because Willis was not a "drug user," and instead "continued to inject and spray [] until Warden Anthony Stewar[t] ordered her to stop because he kn[e]w Willis did not have a history of drug usage."
>
> * * * * * * * * * *
>
> Willis alleges that, "between the hours of 12:38am to 1:10am," he encountered

3

another of the MDOC Defendants, EMS Paramedic Darel Woolsey. Willis alleges Woolsey was deliberately indifferent by "depriving [him] of a complete medical examination and relying on [] inaccurate misdiagnoses" from Bradley and Davenport. Woolsey also was "not trained for this type of emergency medical call or medical treatment," and he "passed on erroneous[] [information] to the medical staff of Duane Waters Emergency room," who "continued the same type of medical procedures with Narcan as a treatment for opioid overdose." During this medical emergency at JCF, some prisoners allegedly heard Woolsey saying, "I'm tired of these guys coming to prison using drugs then overdosing as if we were supposed to save them. I wouldn't care if he died." Willis accuses Woolsey of disregarding "the excessive risk associated with a lethal dosage of Narcan," failing to provide "appropriate medical care to evaluate and treat his correct medical condition," and failing to take "any necessary further actions to assist [him], despite becoming aware of his obvious mistakes after reviewing the toxicology report showing no drugs in [Willis'] system." . . . Ultimately, Willis claims that as a result of the treatment he did and did not receive, he spent 4-plus months in a coma and was left with a slew of serious "irreparable injuries."

\* \* \* \* \* \* \* \*

Finally, Willis alleges that [] [JCF] Warden Anthony Stewart [has] supervisory liability based on [his] alleged failure to "properly train and supervise [his] employees to provide necessary medical care to inmates" at JCF, and [his] alleged "widespread policy and pattern of inadequate medical care, inadequate access to medical care, and inadequate correctional and medical staffing at the prisons."

(ECF No. 61, PageID.574-78; *see* ECF No. 1).

Defendants now move for summary judgment, arguing that Willis failed to raise material questions of fact as to his claims and that they are entitled to qualified immunity. For the reasons discussed below, the Court finds that summary judgment should be granted for Defendants, and that Willis' claims against Davenport should be *sua sponte* dismissed.

**B.    Standard of Review**

Pursuant to Federal Rule of Civil Procedure 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and

4

the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (internal quotations omitted).

**C.     Analysis**

At the heart of this case is Willis' claim that Defendants and Davenport were

deliberately indifferent when they found him unresponsive on the ground from a heart attack, but misdiagnosed him with an opioid overdose and administered emergency doses of Narcan before transporting him to the hospital. In its prior July 18, 2022 R&R, the Court raised concerns about whether Willis' remaining claims failed as a matter law, noting that "[h]is claims against Davenport, Bradley, and Woolsey all appear to state mostly, if not entirely, medical negligence claims," and his "claims against Stewart appear to be based on Stewart's supervisory responsibility as opposed to any direct involvement in the care about which Willis complains." (ECF No. 61, PageID.604 n.13). However, the Court noted that "[r]ather than attempt to fully resolve these issues *sua sponte*, [it would] allow the remaining defendants to raise the issues through a proper motion should they so desire, which will give Willis an opportunity to formally present any counter-arguments." Defendants have now filed a motion for summary judgment, which has been fully briefed. After careful review, the Court finds that Willis failed to raise a material factual question as to whether Defendants or Davenport violated his Eighth Amendment rights.

### *Warden Stewart*

First, summary judgment is warranted on Willis' claims against Warden Stewart because they are based solely on Willis' allegation that Stewart was JCF's warden at the time of the incident in question, and not on any personal involvement by Stewart in that incident.

The law is clear that in order to demonstrate liability under § 1983 a plaintiff must first establish that *each named defendant* acted under color of state law and that *his* or *her* actions violated rights secured by the Constitution and/or laws of the United States. *See*

6

*Baker v. McCollan*, 443 U.S. 137 (1979).  In other words, § 1983 liability cannot be premised upon mere allegations of *respondeat superior*; rather, in order for a party to be held liable under § 1983, there must be a showing that the party personally participated in, or otherwise authorized, approved, or knowingly acquiesced in, the specific allegedly unconstitutional conduct.  *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978); *Phillips v. Roane Cty., Tenn.*, 534 F.3d 531, 543 (6th Cir. 2008).

Thus, "a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor 'either encouraged the specific incident of misconduct or in some other way directly participated in it.  At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.'"  *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Hays v. Jefferson County, Ky.*, 668 F.2d 869, 874 (6th Cir.1982).  Likewise, "liability under § 1983 must be based on active unconstitutional behavior and cannot be based upon a mere failure to act."  *Id.* (quotations omitted); *see Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1998) ("At best, [Plaintiff] has merely claimed that the [supervisory officials] were aware of alleged harassment, but did not take appropriate action.  This is insufficient to impose liability on supervisory personnel under § 1983.").

Here, Willis testified at his deposition that "[t]he only reason that the warden was even named off into the complaint was that I guess *he's responsible for*, you know, *all of the staff*, and that's the reason why he was named off into the complaint," and that "I don't think the warden was present . . . when [the medical emergency] happened."  (ECF No. 75-

7

4, PageID.714) (emphasis added). Warden Stewart also provided an affidavit, in which he attested that his last day working as the warden of JCF was February 1, 2018, he had not been on the premises of JCF since then, and he had no knowledge of Willis' medical incident on June 6, 2018, because he "had not been on the premises in over four months." (*Id.*, PageID.718). Based on this undisputed evidence, Willis' claims against Stewart are clearly subject to dismissal. Stewart was not the JCF's warden at the time of the incident, and, even if he was, Willis' claim against Stewart is based solely on a theory of *respondeat superior* without sufficient evidence of Stewart's personal involvement in the alleged unconstitutional conduct. Thus, Stewart is entitled to summary judgment on Willis' claims against him. *Shehee*, 199 F.3d at 300.

### *Bradley and Woolsey*

Willis' Eighth Amendment claims against Bradley and Woolsey fail on multiple levels. To prevail on this claim, Willis must establish that each defendant was deliberately indifferent to his serious medical needs based on that defendant's own actions. To that end, Willis must satisfy two elements: one objective, and one subjective. Specifically, he must show that he had a serious medical need (the objective prong) and that each defendant, being aware of that need, acted with deliberate indifference to it (the subjective prong). *See Jones v. Muskegon County*, 625 F.3d 935, 941 (6th Cir. 2010). Willis cannot meet these requirements by filling his pleadings with buzzwords and labels, such as where he repeatedly characterizes Defendants' conduct as "malicious," "sadistic," "wanton," "blatant," "inadequate," "grossly incompetent," or "cruel and unusual." (ECF No. 86, PageID.777, 779, 785, 791). Rather, as discussed below, Willis was required to present

8

sufficient evidence to raise a material question of fact as to the specific elements of his claim. He failed to do so as to both the objective and subjective components.

### **Objective Component**

Clearly, an inmate lying on the floor unresponsive is exhibiting a serious need for medical attention.[3] However, the law as to the objective component of an Eighth Amendment claim is not as simple as merely showing such a need. As Defendants correctly argue, the Sixth Circuit has recently held that an inmate may not "rely on his serious medical needs alone to establish the objective element of his deliberate-indifference claim," where the evidence showed that he "received extensive care." *Phillips v. Tangilag*, 14 F.4th 524, 536 (6th Cir. 2021). Rather, because such an inmate's claim ultimately

---

[3] Willis' analysis of the "objective component" is flawed in its premise – that his serious medical need was his alleged heart attack, as opposed to the fact that he was unresponsive, which could have been caused by any number of medical issues, including an overdose. (ECF No. 86, PageID.783) ("The Plaintiffs' [sic] factual dispute is that no medical treatment, 'at all' was provided for which Mr. Willis['] heart attack required . . ."); (ECF No. 75-2, PageID.697; ECF No. 76-1, PageID.729); (ECF No. 1-10, PageID.68 ("After arriving at the scene the unit found a patient named [] Willis . . . The provider's impression was Poisoning/Drug Ingestion.")); *see infra* at 16 (discussing records that showed Willis exhibited symptoms of an opioid overdose). Contrary to Willis' contentions, he presented no evidence that *Defendants* knew he was experiencing a heart attack or that he was not a drug user. For instance, while Willis relies on affidavits of a few inmates who were in the vicinity at the time of the incident, none of them aver that they told *any of the Defendants* that Willis was *not* a drug user, or that he was having a heart attack. (ECF No. 86, PageID.791; ECF No. 1-4). At most, one inmate avers that he told *a corrections officer* that Willis "was having a heart attack" (ECF No. 1-4, PageID.44), but there is no evidence that the corrections officer conveyed this information to Defendants. Moreover, the inmate does not aver that he has any medical training, and it may well have been negligent for the Defendants to make treatment decisions based on this inmate's "diagnosis"; indeed, a heart attack and drug overdose are not mutually exclusive conditions. Similarly, while Willis asserts that the corrections officers "know[] [his] behavior and habits better than health service being that they are around [him] ever[y] day," he does not present any evidence that these officers told Defendants Willis was not a drug user, and the Defendants' unfamiliarity with Willis further supports their lack of knowledge that he was having a heart attack. (ECF No. 86, PageID.791). Finally, Willis testified that he had not been experiencing heart issues, and had no past history of heart issues. (ECF No. 75-4, PageID.711-12) ("I mean I don't have a history of heart problems.").

9

"challenges the adequacy of this undisputed care, he must show that the doctors provided grossly incompetent treatment." *Id.* And, as Defendants correctly argue in their motion, that "showing" must be made through proper medical evidence:

> To prove [an] objectively serious harm in the health context, prisoners must first establish that they have "serious medical needs." They can do so, for example, by showing that a doctor has diagnosed a condition as requiring treatment or that the prisoner has an obvious problem that any layperson would agree necessitates care. A serious medical need alone can satisfy this objective element if doctors effectively provide no care for it. More frequently, doctors provide some care and prisoners challenge their treatment choices as inadequate. To establish the objective element in this common situation, prisoners must show more. Objectively speaking, this care qualifies as "cruel and unusual" only if it is "so grossly incompetent" or so grossly "inadequate" as to "shock the conscience" or "be intolerable to fundamental fairness." Ordinary individuals outside a prison's walls and inmates within those walls both face a risk that their doctors will perform incompetently. . . . But mere malpractice does not violate the Eighth Amendment. Only grossly or woefully inadequate care – not just care that falls below a professional standard – can be called "cruel and unusual." For prisoners to prove grossly inadequate care, moreover, courts generally require them to introduce medical evidence, typically in the form of expert testimony.

*Phillips*, 14 F.4th at 534-36 (internal citations omitted).

Because the plaintiff in *Phillips* failed to introduce "expert medical evidence describing what a competent doctor would have done and why the chosen course was not just incompetent but grossly so," the Sixth Circuit found that his claim of deliberate indifference could not "get past the objective stage." *Id.* at 537 (emphasis added). Willis' deliberate indifference claim similarly fails under the *Phillips* standards.

Willis failed to present any expert medical evidence establishing that, given the circumstances confronting them, the emergency medical treatment Defendants administered amounted to "grossly or woefully inadequate care" such that it was "cruel

10

and unusual." *Phillips*, 14 F.4th at 534-36. Even if Willis can establish that he was not actually suffering from a drug overdose when encountered by Defendants, but instead had suffered some form of a heart attack or stroke, Willis has not alleged, must less shown through proper evidence, the appropriate course of medical treatment that a competent doctor would have administered in such an emergency situation and how Defendants' actions not only "[fell] below [that] professional standard" but were "grossly and woefully inadequate" in their care. *Id.* at 535. To the contrary, even viewed in the light most favorable to Willis, he presented no evidence that the use of Narcan harmed him, and evidence in the record shows that his condition actually *improved* following his receipt of that drug until he was able to be transported to the hospital for a more thorough evaluation and treatment.

Relevant here, the medical evidence reflects that, on June 6, 2018 at 11:57 p.m., Nurse Davenport received an emergency call from the housing unit regarding a "man down." (ECF No. 1-2, PageID.32). Willis was found to be "[u]nresponsive to painful stimuli," he had "respirations agonal 8/min," and his pupils were "pinpoint." (ECF No. 1-7, PageID.59). An ambulance was called minutes later at 12:03 a.m. on June 7, 2018, and in the meantime, Nurses Davenport and Bradley proceeded to provide Willis with "Immediate Interventions" by applying oxygen "via NA at 4 liters per minute" and administering "2 mg Narcan IM to left thigh with no effect." (ECF No. 1-7, PageID.59). They then titrated the oxygen to "15 liters per minute via non rebreather mask," applied an "AED" (automated external defibrillator) with "no shock," and administered "4 mg Narcan intranasal" followed by "2 mg Narcan IM to right thigh," which managed to increase

11

Willis' respirations to "12/min." (*Id.*).

Around 12:30 a.m., Emergency Medical Services ("EMS"), consisting of Paramedic Woolsey and Emergency Medical Technician Scott Marriott, was dispatched. (*Id.*; ECF No. 75-3, PageID.703). Paramedic Woolsey reached Willis by 12:38 a.m., at which time Woolsey was informed that Willis had initially been "unconscious" and "unresponsive" for about "10 Minutes" based on a "provider's impression [of] Poisoning/Drug ingestion," but that Willis' condition had "Improved Responsiveness upon Admin of Opioid Antagonist," *i.e.*, Narcan. (ECF No. 1-10, PageID.68). At 12:38 a.m., Woolsey administered 15 liters per minute of oxygen per protocol, and at 12:42 a.m., administered "Airway-Nasal per Protocol (Standing Order)," which was "performed successfully" and "Improved" Willis' responsiveness. (*Id.*, PageID.68). Willis' vitals were taken at 12:45 a.m., which showed a respiratory rate of 8. (*Id.*, PageID.68-69). Five minutes later, at 12:50 a.m., Woolsey administered 2 mg of Narcan intravenously "per Protocol (Standing Order)," and Willis' "response was Improved." (*Id.*). His vitals were taken again two minutes later at 12:52 a.m., at which time his respiratory rate had increased "up to 28 per minute," and his pupils improved from "pinpoint and non-reactive" to "3 mm and sluggish" "after narcan admin[istration]." (*Id.*).

Willis was subsequently moved to a stretcher and taken to the ambulance, at which point he "began to open eyes with verbal response." (*Id.*, PageID.69). Willis was transported with emergency sirens and lights to Henry Ford Allegiance Hospital by 1:10 a.m., and "upon arrival report and care turned over to [Emergency Room] nursing staff in room 32." (*Id.*). This appears to be the entirety of these remaining Defendants'

12

involvement in treating Willis' medical emergency for purposes of this case.

Based on the above evidence, there is no factual dispute that immediately following the emergency treatment Defendants provided between approximately 11:57 p.m. and 1:10 a.m. Willis' respiration rate more than tripled, and he went from a state of unresponsiveness to opening his eyes and providing some verbal responses. While Willis *alleges* that he was allergic to Narcan and was "poisoned" by Defendants' administration of such medication, he presents *no medical evidence* whatsoever demonstrating that he suffered an allergic reaction or Narcan poisoning.[4] In fact, even after Willis was admitted to Henry Ford Allegiance Hospital, a treatment record dated June 13, 2018, notes that Willis "initially presented to the hospital on 6/7/18 after being found down at his facility. There was concern for possible overdose of unknown substance. Patient *did receive Narcan in the ED [Emergency Department]* without resolution of altered mental status." (ECF No. 1-24, PageID.157) (emphasis added). In other words, even the doctors at Henry Ford Allegiance Hospital determined that, at a minimum, it was not inappropriate to administer an *additional* dose of Narcan in an attempt to improve Willis' symptoms.

In sum, the medical record does not reflect any harm stemming from the emergency

---

[4] The Court notes that, long after the expiration of the discovery and dispositive motion deadlines, on May 11, 2023, Willis filed a "Motion Requesting for Appointment of Pretrial Expert Medical Examiner Witness," in which he requests the appointment of a medical examiner to evaluate his medical documents and condition to determine "whether narcan caused the Plaintiff's death, and was the cause of his organs failing because of the narcan being administered to Mr. Willis while he was having a stroke/heart attack as a form of medical treatment." (ECF No. 84, PageID.762-63). In other words, Willis acknowledges that he presently does not have proper medical evidence as to what effect, if any, the administration of Narcan had on him during the incident at issue in this case and, as discussed herein, failed to present such evidence in opposing summary judgment. This dooms his claim at this stage of the proceedings. *See Phillips*, 14 F.4th at 534-36. *See also Tillotson v. Manitowoc Co., Inc.*, 727 F. App'x 164, 169 (6th Cir. 2018).

use of Narcan both as to Willis specifically and as a general matter for such emergencies, and that after Willis was administered Narcan inside JCF, his respiration and responsiveness improved. He was then able to be transported to the hospital for more thorough examination and treatment.

To the extent Willis asserts that Defendants administered a "lethal dosage" of Narcan in excess of standard protocol, (*see, e.g.*, ECF No. 1, PageID.15 (alleging that Woolsey administered "10 mg more of Narcan" to Willis without knowing that Willis "had already been given 12 mg of Narcan.")), Willis established no foundation for this allegation, and the medical evidence in the record belies it. As detailed above, *supra* 11-12, Nurses Bradley and Davenport administered a total of 8 mg of Narcan, and Paramedic Woolsey administered an additional 2 mg of Narcan, for a total of *10 mg* of Narcan before Willis was transported from the prison to the hospital. The evidence also shows that the 10 total mgs of Narcan administered at the prison fell within the standard protocol range because "Per Narcan standing orders; Narcan may be repeated with a maximum of 10 mg." (ECF No. 1-3, PageID.39).

In sum, Willis failed to present *any* evidence, let alone expert medical evidence, demonstrating that the emergency treatment he was provided at the prison was in any way improper or inadequate, much less "grossly or woefully" so, considering the circumstances. *Phillips*, 14 F.4th at 534-36. Thus, Willis failed to present evidence sufficient to raise a material question of fact as to whether he can satisfy the objective component of his deliberate indifference claim. Accordingly, on this basis alone, summary judgment is appropriate.

**Subjective Component**

While Willis' failure to satisfy the objective component alone is a sufficient basis to grant Defendants' motion, Willis also fails to present evidence that would satisfy the subjective component. To satisfy the subjective prong, Willis must show that each particular defendant possessed "a 'sufficiently culpable state of mind,' rising above negligence or even gross negligence and being 'tantamount to intent to punish.'" *Broyles v. Corr. Medical Servs., Inc.*, 478 F. App'x 971, 975 (6th Cir. 2012) (quoting *Horn v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994)). Put another way, "[a] prison official acts with deliberate indifference if he knows of a substantial risk by failing to take reasonable measures to abate it. Mere negligence will not suffice. Consequently, allegations of medical malpractice or negligent diagnosis and treatment generally fail to state an Eighth Amendment claim of cruel and unusual punishment." *Broyles*, 478 F. App'x at 975 (internal quotations omitted). As the Sixth Circuit has recognized, these requirements are "meant to prevent the constitutionalization of medical malpractice claims; thus, a plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001). "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).

Here, Willis fails to raise a material factual question as to whether defendants' misdiagnosis of a possible overdose and subsequent treatment amount to more than

medical negligence. Contrary to Willis' assertions, there is no evidence that at the time Willis was administered Narcan, the Defendants knew he was having a heart attack. First, as discussed above, *supra* at 9 n.3, the inmate affidavits on which Willis relies show at most that one inmate told *one correction officer* that Willis was having a heart attack. Nothing in the record indicates that that information was relayed to Defendants, and even if it had been, that would not necessarily mean the information was accurate or that an overdose could not also have been occurring. Second, the medical signs and Defendants' experience pointed to a possible opioid overdose. The record evidence reflects that "[s]igns of opioid overdose include[:] slowed breathing, or no breathing; very small or pinpoint pupils in the eyes; slow heartbeats; or extreme drowsiness, especially if you are unable to wake the person." (ECF No. 1-3, PageID.39). As discussed above, *supra* at 11-12, medical records confirm that Willis exhibited such symptoms when he was found unconscious in the prison, including that he was "[u]nresponsive to painful stimuli," his respirations were merely "8/min," and his pupils were "pinpoint." (ECF No. 1-7, PageID.59). Nurse Bradley also attests that "[w]hen an inmate is found non-responsive with no other signs of injury or trauma there is a concern that the inmate might be suffering from a drug overdose involving opiates to which Narcan can provide relief . . . because that is one of the most common issues we see with inmates that are found nonresponsive with no other signs of injury or trauma." (ECF No. 75-2, PageID.697; ECF No. 76-1, PageID.729). She also attests that it is "good medical practice" to administer Narcan "where there is a possibility of an opiate overdose because Narcan will not normally cause an issue in someone not suffering an opiate overdose," and that Willis "was never provided Narcan in excess of what is

16

permitted by MDOC Policy and/or the manufacturer of Narcan." (ECF No. 75-2, PageID.698; ECF No. 76-1, PageID.730-31).[5]

Finally, evidence in the form of Willis' deposition testimony demonstrates that Defendants had no prior knowledge or reason to suspect a heart attack, as Willis testified at his deposition that he does not have a history of heart problems, (ECF No. 75-4, PageID.712 (". . . I don't have a history of heart problems.")). Willis' testimony also belies his allegation that Bradley "continued to inject and spray [Narcan] until Warden Anthony Stewar[t] ordered her to stop because he kn[e]w Willis did not have a history of drug usage," as Willis testified that Stewart was not present during the incident, (*id.*, PageID.714 ("I don't think the warden was present . . . when [the medical emergency] happened.")).

In sum, contrary to Willis' conclusory assertions that Defendants acted "maliciously," "sadistically," and based merely on their "best guess" (ECF No. 86, PageID.785), the evidence shows that Defendants made medical judgments based on their experience and the evidence before them. Willis' mere disagreement with the medical care they provided raises at most a medical negligence claim which cannot satisfy the subjective prong of the deliberate indifference test. *Westlake*, 537 F.2d at 860 n.5; *Rhinehart v. Scutt*, 894 F.3d 721, 740 (6th Cir. 2018) ("An inmate's disagreement with the testing and treatment he has received ... does not rise to the level of an Eighth Amendment violation.");

---

[5] While Willis claims he received a "lethal dosage" of Narcan (ECF No. 86, PageID.777), the evidence indicates he was treated within the limits of the Narcan standing orders "until [his] return of spontaneous respirations occurred," (ECF No. 1-3, PageID.39), and medical records confirm that he was administered up to 10 mg of Narcan which increased his respiratory rate from 8/min to 12/min to 28/min. (*Id.*; ECF No. 1-10, PageID.68).

*Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) ("When a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation."); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Farmer v. Brennan,* 511 U.S. 825, 835 (1994).[6]

Accordingly, defendants Bradley and Woolsey are entitled to summary judgment on Willis' claims against them. And, because the record evidence and Eighth Amendment analysis apply equally to Davenport as detailed above, Willis' claims against her should be dismissed for failure to state a claim pursuant to 42 U.S.C. § 1997e(c)(1) and 28 U.S.C. § 1915(e)(2)(B).

### III.  CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment **(ECF No. 75)** be **GRANTED**, and that Willis' claims against remaining defendant Laura Davenport be **DISMISSED** for failure to state a claim pursuant to 42 U.S.C. § 1997e(c)(1) and 28 U.S.C. § 1915(e)(2)(B).

Dated: August 8, 2023　　　　　　　　　　　s/David R. Grand
Ann Arbor, Michigan　　　　　　　　　　　DAVID R. GRAND
　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

---

[6] For all these reasons, even taking the evidence in the light most favorable to Willis, he failed to show an Eighth Amendment violation, much less that it was clearly established that Defendants' emergency treatment of Willis until he could be admitted to the hospital constituted deliberate indifference to a serious medical need. Thus, Bradley and Woolsey are entitled to qualified immunity, as well. *See Beaton v. City of Allen Park*, 2015 WL 3604951, at *10 (E.D. Mich. Jun. 8, 2015) ("[T]o defeat [Defendants'] assertion of qualified immunity, 'Plaintiff must show both that, viewing the evidence in the light most favorable to [him], a constitutional right was violated and that the right was clearly established at the time of the violation.'") (quoting *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009)).

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge. A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 8, 2023.

s/Eddrey O. Butts  
EDDREY O. BUTTS  
Case Manager